UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION

JAMES NOONAN BLAIR, JR.                                          PLAINTIFF

v.                                          CIVIL ACTION NO. 5:21-CV-P75-TBR

KENTUCKY STATE PENITENTIARY *et al.*                            DEFENDANTS

## MEMORANDUM OPINION AND ORDER

Plaintiff James Noonan Blair, Jr., initiated this *pro se* 42 U.S.C. § 1983 prisoner civil-rights action. This matter is before the Court for initial screening pursuant to 28 U.S.C. § 1915A. For the reasons stated below, the Court will allow some of Plaintiff's claims to proceed and dismiss other claims.

## I. SUMMARY OF AMENDED COMPLAINT[1]

Plaintiff is a convicted inmate incarcerated at Kentucky State Penitentiary (KSP). He names the following Defendants: Governor Andy Beshear[2]; Kentucky Department of Corrections (KDOC) Commissioner Cookie Crews; KDOC Ombudsman John Dunn; KSP Warden Scott Jordan; and the following KSP employees – Randy White, De'Edra Hart, Katrina Grubbs, Roger Mitchell, Jeffery Barrett, Melvin O'Dell, Craig Campbell, Steven Ryan, Stacey Gibson, Leah Artese, Fowler, Travis Bradley, Patricia Allen, Lauren Massey, Frederick Rogers, Micah Melton, Bradford Richie, Melissa Bendler-Crick, James Smith, Justin Wilson, Tammie Hutchinson, Jill Robertson, Skyla Grief, Robert S. Harris, Bruce von De'Wingelo, Christopher Harry Vinson, Melissa Vaughn, Nathaniel Todd, Seth Mitchell, Brian Neely, Bare, and Racheal Hughes. Plaintiff

---

[1] The "complaint" (DN 1) is simply a letter from Plaintiff to the Court with states that that he has submitted "the full filing fee and administrative fee for civil rights complaint under [] § 1983." At the Court's direction, Plaintiff filed an amended complaint on a Court-supplied form (DN 10).

[2] Although Plaintiff spells the Governor's last name as "Beshear," the Court take judicial notice that the correct spelling is "Beshear."

also sues Wellpath Nurse Terrie McKinney and Keefe Foods Commissary Agent Melissa Mullians. Plaintiff sues all Defendants in both their official and individual capacities.

Plaintiff alleges that these Defendants violated his constitutional rights.

As relief for the alleged violations of his rights, Plaintiff seeks damages and injunctive relief in the form of the return of good-time credits.

## II. LEGAL STANDARD

When a prisoner initiates a civil action seeking redress from a governmental entity, officer, or employee, the trial court must review the complaint and dismiss the complaint, or any portion of it, if the court determines that the complaint is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* § 1915A(b)(1), (2); *McGore v. Wrigglesworth*, 114 F.3d 601, 604 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007).

In order to survive dismissal for failure to state a claim, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "[A] district court must (1) view the complaint in the light most favorable to the plaintiff and (2) take all well-pleaded factual allegations as true." *Tackett v. M & G Polymers, USA, LLC*, 561 F.3d 478, 488 (6th Cir. 2009) (citing *Gunasekera v. Irwin*, 551 F.3d 461, 466 (6th Cir. 2009) (citations omitted)). "But the district court need not accept a 'bare assertion of legal conclusions.'" *Tackett*, 561 F.3d at 488 (quoting *Columbia Natural Res., Inc. v. Tatum*, 58 F.3d 1101, 1109 (6th Cir. 1995)). "A pleading that offers 'labels and conclusions' or

2

'a formulaic recitation of the elements of a cause of action will not do.'  Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).

Although this Court recognizes that *pro se* pleadings are to be held to a less stringent standard than formal pleadings drafted by lawyers, *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Jourdan v. Jabe*, 951 F.2d 108, 110 (6th Cir. 1991), "[o]ur duty to be 'less stringent' with pro se complaints does not require us to conjure up unpled allegations."  *McDonald v. Hall*, 610 F.2d 16, 19 (1st Cir. 1979) (citation omitted).  And this Court is not required to create a claim for Plaintiff. *Clark v. Nat'l Travelers Life Ins. Co.*, 518 F.2d 1167, 1169 (6th Cir. 1975).  To command otherwise would require the Court "to explore exhaustively all potential claims of a *pro se* plaintiff, [and] would also transform the district court from its legitimate advisory role to the improper role of an advocate seeking out the strongest arguments and most successful strategies for a party."  *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985).

### III.  ANALYSIS

#### A.  State Defendants

##### 1.  Official-Capacity Claims

The Court will first address Plaintiff's official-capacity claims against the KDOC and KSP Defendants, or the "State Defendants."  "[O]fficial-capacity suits . . . 'generally represent [] another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 166 (1985) (quoting *Monell v. New York City Dep't of Soc. Servs.*, 436 U.S. 658, 691 n.55 (1978)).  Claims brought against state employees in their official capacities are deemed claims against the Commonwealth of Kentucky.  *See Kentucky v. Graham*, 473 U.S. at 166.  States, state agencies, and state employees sued in their official capacities for money damages

3

are not "persons" subject to suit under § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). Thus, because Plaintiff seeks money damages from state employees in their official capacities, he fails to allege cognizable claims under § 1983. Further, the Eleventh Amendment acts as a bar to claims for monetary damages against a state, its agencies, and state employees or officers sued in their official capacities. *Kentucky v. Graham*, 473 U.S. at 169.

For these reasons, the Court will dismiss Plaintiff's official-capacity claims against the State Defendants for failure to state a claim upon which relief may be granted and for seeking monetary relief from a defendant who is immune from such relief.

### 2. Individual-Capacity Claims

#### a. "Arrest" and Placement in Segregation

Plaintiff alleges that Defendants Harris and Campbell violated his rights under the Fourth and Fourteenth Amendments by "arresting" him and placing him in the maximum segregation unit at KSP.

The Fourth Amendment protects against unreasonable seizures, including warrantless arrests without probable cause. Plaintiff's Fourth Amendment claim is without merit, however, because:

> he was already in state custody by virtue of his criminal convictions when Defendants allegedly 'seized' him and placed him in segregation. In other words, he was already lawfully subject to all the limitations on liberty incident to arrest and imprisonment, including the possibility of confinement in segregation. Thus, transferring him from one area of the prison to a more restrictive area did not constitute a "seizure" under the Fourth Amendment, and did not require a warrant or probable cause.

*Hubbard v. Mann*, No. 2:21-cv-55, 2021 U.S. Dist. LEXIS 127064, at *22-23 (W.D. Mich. July 8, 2021); *see also Barfield v. Erdos*, No. 1:15-cv-696, 2015 U.S. Dist. LEXIS 177092, at *9 n.2

(S.D. Ohio Dec. 31, 2015) (dismissing Fourth Amendment claim based upon placement in segregation for failure to state a claim upon which relief may be granted).

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To establish a Fourteenth Amendment procedural due process violation, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of procedural due process claims involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

"[T]he Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson v. Austin*, 545 U.S. at 221. Thus, to determine whether segregation of an inmate from the general prison or jail population involves the deprivation of a liberty interest protected by the Due Process Clause of the Fourteenth Amendment, the Court must determine if the segregation imposes an "atypical and significant" hardship on the inmate "'in relation to the ordinary incidents of prison life.'" *Jones v. Baker*, 155 F.3d 810, 811 (6th Cir. 1998) (quoting *Sandin v. Conner*, 515 U.S. 472, 483 (1995)). Under various circumstances, courts have found that confinement to administrative segregation does not present an "atypical and significant" hardship implicating a protected liberty interest. *See, e.g.*, *Jones v. Baker*, 155 F.3d at 812-13 (holding that two years of segregation while inmate was investigated for murder of prison guard in riot did not implicate a liberty interest entitling him to due process); *Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997) (concluding that more than a year in administrative segregation did not implicate inmate's due process rights); *Webb v. Bucholtz*,

No. 1:20-cv-1036, 2021 U.S. Dist. LEXIS 39326, at *4-7 (W.D. Mich. Mar. 3, 2021) (holding that pretrial detainee's ten-month placement in segregation failed to implicate a liberty interest entitling him to due process); *Dawson v. Norwood*, No. 1:06-cv-914, 2010 U.S. Dist. LEXIS 54306, at *17 (W.D. Mich. June 1, 2010) (ruling that nine-month placement in administrative segregation did not constitute an atypical and significant hardship warranting due process protections); *cf. Harris v. Caruso*, 465 F. App'x 481, 484 (6th Cir. 2012) (holding that the prisoner's eight-year confinement in segregation was of "atypical duration" and thus "created a liberty interest that triggered his right to due process").

In light of this jurisprudence, the Court concludes that Plaintiff's one-sentence allegation regarding his "arrest" and placement in segregation fails to show that he suffered an atypical and significant hardship triggering his right to due process under the Fourteenth Amendment.

For these reasons, the Court will dismiss Plaintiff's Fourth and Fourteenth Amendment claims based upon this allegation for failure to state a claim upon which relief may be granted.

### b. Cell Search

Plaintiff alleges that Defendants Stephen Mitchell, O'Dell, and Barrett violated his rights under the Fourth and Fourteenth Amendments when they "entered his prison cell to conduct a prescheduled cell search without first making an effort to have [Plaintiff] to witness the search."

Although the Fourth Amendment generally prohibits the government from conducting unreasonable searches, the Supreme Court has held that the Fourth Amendment does not apply to cell searches, because "society is not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner might have in his prison cell." *Hudson v. Palmer*, 468 U.S. 517, 526 (1984). Moreover, the Court cannot ascertain how the Fourteenth Amendment applies to this allegation since it does not involve the deprivation of life, liberty, or property.

Thus, the Court will dismiss Plaintiff's claims based upon the cell search for failure to state a claim upon which relief may be granted.

### c. Deprivation/Destruction of Property

Plaintiff alleges that Defendant Wilson took a legal document from him and gave it to his supervisor, Defendant Smith, who "arbitrarily desposed of the document" and that Defendant Artese "arbitrarily confiscated Plaintiff's personal food items, . . . disorganized, destroyed and desposed of Plaintiff's legal files . . .; personal sentimental old letters from the Plaintiff's deceased mother and relatives obituaries." Plaintiff alleges that Defendants Artese, Ryan, Bradley, Roger Mitchell, Vinson, Bendler-Rick, and Vaughn:

> Has stolen, 'cofiscated (with and without recording),' refused to record, arbitrarily desposed Plaintiff's personal collection of old letters (including letters from his deceased mother), death obituaries or relatives, legal volumes, legal case copies and other legal documents, including spitefully disorganizing legal files . . . . but also took (unrecorded) numerous other personal properties such as appliance ear buds, unopened appliance batteries and food items; furthermore the defendants allowed, approved, and unrecorded approval of at least two (2) full storage bins of personal properties [which included] personal addresses, names, and phone numbers . . . and documents from the [KDOC] . . . .

Plaintiff alleges that Defendant Crews instituted a policy "claiming a complete theft and monopoly over [] Plaintiff's personal saving account. Such implemented policy was languaged in such a way that while the state government's agency complete access [to the account], arbitrarily denied Plaintiff unlimited access and control of his personal prison savings account."

Plaintiff alleges that Defendants Jordan, Vinson, Bendler-Crick, and Vaughn defaced his personal property with black permanent marker "and/or by imploring a heat gun to engrave into the surface . . . ."

Finally, Plaintiff alleges that Defendants Artese and Ryan refused to deliver certain personal property to his segregation cell.

Plaintiff claims that these actions violated his rights under the Fourth and Fourteenth Amendments. "Prisoners do not have a Fourth Amendment right to be free from the seizure of their personal property." *Marceleno v. Cal. Dep't of Corr. & Rehab*, 1:17-cv-01136-LJO-GSA-PC, 2019 U.S. Dist. LEXIS 85641, at *11 (E.D. Cal. May 21, 2019) (citing *Hudson v. Palmer*, 468 U.S. at 536); *see also Morgan v. Wetzel*, No. 20-2881-KSM, 2020 U.S. Dist. LEXIS 240146, at *9 (E.D. Pa. Dec. 21, 2020) (("The protections of the Fourth Amendment regarding personal property do not apply in the prison context.") (citing *Hudson v. Palmer*, 468 U.S. at 538) (O'Connor, concurring) ("The fact of arrest and incarceration abates all legitimate Fourth Amendment privacy and possessory interests in personal effects.")).

In addition, courts have held that the prisoners do not have a "property interest" under the Fourteenth Amendment in "keeping [] unspecified personal property" in their cells. *Hailey v. Cieply*, No. 1:20-cv-1248, 2021 U.S. Dist. LEXIS 130869, at *17 (W.D. Mich. July 14, 2021); *see also Smith v. Ortiz*, No. 05-1211, 2006 U.S. App. LEXIS 6562, at *2 (10th Cir. Mar. 14, 2006) (recognizing the distinction between the right to own property and the right to possess it while in prison and holding that, when a prisoner was allowed to send his property to another location, he was not deprived of property). Moreover, in *Hudson v. Palmer*, the Supreme Court held that where adequate remedies are provided by state law, the negligent or intentional loss or destruction of personal property does not state a claim cognizable under the Due Process Clause of the Fourteenth Amendment. 468 U.S. at 533; *Parratt v. Taylor*, 451 U.S. 527 (1981). *overruled on other grounds by Daniels v. Williams*, 474 U.S. 327 (1986). To assert a constitutional claim for deprivation of property, a plaintiff must allege that the state post-deprivation procedures are inadequate to remedy the deprivation. *Parratt v. Taylor*, 451 U.S. at 543-44; *see also Vicory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983) (holding that "in § 1983 damage suits claiming the

deprivation of a property interest without procedural due process of law, the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate").  The Sixth Circuit has found that Kentucky's statutory remedy for such losses is adequate within the meaning of *Parratt*.  *See Wagner v. Higgins*, 754 F.2d 186, 191-92 (6th Cir. 1985).

Thus, Plaintiff's Fourth and Fourteenth Amendment claims based upon the deprivation of property fail to state a claim upon which relief may be granted.

Because Plaintiff references the taking and/or denial of access to legal documents, the Court will also consider whether Plaintiff has stated a claim for denial of access to the courts.  To state such a claim, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement.  *Lewis v. Casey*, 518 U.S. 343, 355 (1996); *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999) (en banc) ("Thus, a prisoner's right to access the courts extends to direct appeals, habeas corpus applications, and civil rights claims only.").  That is, there must be an actual injury, and no actual injury occurs without a showing that a legal claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented."  *Lewis v. Casey, 518 U.S.* at 356; *see also Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996) (stating that an inmate must show, "for example, that the inadequacy of the prison law library or the available legal assistance caused such actual injury as the late filing of a court document or the dismissal of an otherwise meritorious claim").

Here, Plaintiff does not assert that the deprivation of access to any legal property caused a legal claim to be lost or rejected or that the presentation of such a claim is currently being prevented.  Thus, the Court concludes that Plaintiff has also failed to state a claim for denial of access to the courts based upon the alleged denial of access to his legal property.

### d.  Conditions of Confinement

#### 1) Unsanitary Cells

Plaintiff alleges that Defendant Gibson violated his rights by placing him in a segregation cell that was not cleaned after its prior occupant was released.  Plaintiff claims that as a result he was placed in a segregation cell where he found dried human feces and a bedding mat that smelled of urine and feces.  Plaintiff alleges that on a separate occasion Defendants Patton and Bradley escorted him to another "unsanitized" segregation cell "with visible human feces still clinging to the back of the stainless steel toilet."

Plaintiff additionally alleges that other prisoners in segregation intentionally clog up their toilets resulting in sewage water flooding the "walk's floor and other neighboring segregated prisoners' cell floors . . . ."  Plaintiff states that when this occurs prison officials turn off the water supply and that it can then only be turned back on by maintenance officials.  Plaintiff alleges that on occasion it has taken maintenance officials up to twelve hours to turn the water back on. Plaintiff states that when the water is turned off there is no way to clean the feces and urine from the floors.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous," nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345-46 (1981).  The Eighth  Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes v. Chapman*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600-01 (6th Cir. 1998).  The Eighth

Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes v. Chapman*, 452 U.S. at 348 (citation omitted). Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey v. Wilson*, 832 F.2d at 954. "Routine discomfort is 'part of the penalty that criminal offenders pay for their offenses against society.'" *Hudson v. McMillian*, 503 U.S. 1, 9 (1992) (quoting *Rhodes v. Chapman*, 452 U.S. at 347). As a consequence, "extreme deprivations are required to make out a conditions-of-confinement claim." *Id.* Moreover, the Sixth Circuit has noted that, in conditions-of-confinement claims, "the length of exposure to the conditions is often paramount." *Lamb v. Howe*, 677 F. App'x 204, 209 (6th Cir. 2017) (citing *DeSpain v. Uphoff*, 264 F.3d 965, 974 (10th Cir. 2001)).

In *Lamb v. Howe*, the Sixth Circuit concluded that the plaintiff's exposure to human waste for four hours was "a temporary inconvenience that, while serious, did not last so long as to create conditions that fall below 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 511 (6th Cir. 2001); *see also Gallant v. Holdren*, No. 1:16-CV-383, 2019 U.S. Dist. LEXIS 50787, at *17 (S.D. Ohio Feb. 20, 2019) (finding plaintiff's forced exposure to sewage overflow in cell unit for sixteen hours did not constitute Eighth Amendment violation), *report and recommendation adopted*, 2019 U.S. Dist. LEXIS 49965 (S.D. Ohio Mar. 26, 2019); *Wiley v. Ky. Dep't of Corr.*, No. CIV.A. 11-97-HRW, 2012 U.S. Dist. LEXIS 166385, at *14 (E.D. Ky. Nov. 21, 2012) (concluding that inmate's "alleged exposure to the overflowing toilet and resulting odors, while no doubt unpleasant, was of short duration—one day—and did not amount to an Eighth Amendment violation") (citing *Smith v. Copeland*, 87 F.3d

265, 269 (8th Cir. 1996) (finding no Eighth Amendment violation as a matter of law where inmate was exposed to raw sewage from an overflowed toilet in his cell for four days).

In light of this jurisprudence, and Plaintiff's allegation that he was not exposed to sewage for more than twelve hours at a time, the Court concludes that he has failed to state an Eighth Amendment claim upon which relief be granted.

Plaintiff's claims under the Due Process Clause of the Fourteenth Amendment fail because Plaintiff's allegations do rise to the level of an "atypical and significant hardship" under *Sandin*. *See, e.g.*, *Manzanillo v. Moulton*, No. 13-cv-2174-JST (PR), 2014 U.S. Dist. LEXIS 135827 (N.D. Cal. Sept. 25, 2014) (35-day stay in noisy psychiatric unit in which other inmates threw feces and urine not an atypical and significant hardship).

### 2) Inadequate Bedding

Plaintiff alleges that on one occasion Defendants Allen and Stephen Mitchell took his "bedding mattress," blanket, and sheets and "left Plaintiff in a freezing cell to sleep on bare metal bed frame for over twenty-four (24) hours." Plaintiff claims that these actions violated his rights under the Eighth and Fourteenth Amendments.

Plaintiff fails to state an Eighth Amendment claim based upon these allegations. *See, e.g.*, *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (holding "the deprivation of a mattress and bedding for a fixed period of time does not violate the Eighth Amendment"); *Jones v. Toombs*, 77 F.3d 482 (6th Cir. 1996) (holding that two weeks without a mattress did not violate the Eighth Amendment); *O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (holding that three days without a blanket and a mattress during a disciplinary confinement did not violate the Eighth Amendment); *Centeno v. Wilson*, No. 1:08-CV-1435-FJM, 2011 U.S. Dist. LEXIS 21796, at *6-7 (E.D. Cal. Mar. 4, 2011) (finding sleeping on cold floor without a

mattress or blanket for seven days, resulting in the inmate's "muscles ach[ing] from shivering" did not violate the Eighth Amendment), *aff'd*, 479 F. App'x 101 (9th Cir. 2012).

The Court also concludes that Plaintiff has failed to state a Fourteenth Amendment claim because his allegations do not rise to the level of an "atypical and significant hardship" under *Sandin. See, e.g.*, *Sanders v. Smith*, No. 1:11-cv-892, 2011 U.S. Dist. LEXIS 135839, at *47-49 (W.D. Mich. Nov. 27, 2011) (holding that more than 30 days on a "mattress, sheets, and bed covering restriction" with no clothes was not so "atypical and significant" as to give rise to a Fourteenth Amendment due process claim); *Mosley v. Bishop*, No. 07-692-KD-M, 2009 U.S. Dist. LEXIS 133212, at *24-25 (S.D. Ala. May 7, 2009) (holding denial of mattress, bedding, and clothes except for boxer shorts for nine days did not constitute an "atypical and significant hardship in relation to the ordinary incidents of prison life" under *Sandin*).

For these reasons, the Court will dismiss Plaintiff's conditions-of-confinement claims for failure to state a claim upon which relief may be granted.

### e. Grievance Issues

Plaintiff alleges that Defendants Grief, Roger Mitchell, and Massey violated his rights by using their "position and influence, to corruptly deny, dispose of and refuse to accept [] Plaintiff's submitted institutional grievances on numerous occasions; making the prisoners' institutional grievance process ineffective and very discouraging . . . ." Plaintiff alleges that Defendant Hughes "arbitrarily denied Plaintiff's right to submit an institutional grievance" on one occasion.

Prisoners do not possess a constitutional right to a prison grievance procedure. *See Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005) (per curiam) ("All circuits to consider this issue have . . . found that there is no constitutionally protected due process right to unfettered access to prison grievance procedures."); *Argue v. Hofmeyer*, 80 F. App'x 427, 430

13

(6th Cir. Oct. 30, 2003) ("there is no inherent constitutional right to an effective grievance procedure") (citing cases). For this reason, the denial of a grievance or the failure to act based upon information contained in a grievance fails to state a claim under § 1983. *Gibbs v. Laughhunn*, No 16-1771, 2017 U.S. App. LEXIS 13760, at *5 (6th Cir. Feb. 2, 2017); *see also LaFlame v. Montgomery Cty. Sheriff's Dep't*, 3 F. App'x 346, 348 (6th Cir. 2001) (holding plaintiff's allegation that jail staff ignored the grievances he filed did not state a § 1983 claim "because there is no inherent constitutional rights to an effective grievance procedure").

Thus, the Court will dismiss Plaintiff's grievance-related claims for failure to state a claim upon which relief may be granted.

### f. Failure to Investigate

The Court next turns to Plaintiff's claim that Defendants Fowler and Allen violated his right to due process under the Fourteenth Amendment when they failed to conduct an investigation into the "disciplinary allegation" against him.

Because Plaintiff does not allege that Defendants' failure to investigate had an "inevitable affect [on] the duration of his sentence" or resulted in an "atypical and significant hardship" under *Sandin*, the Court will dismiss Plaintiff's Fourteenth Amendment claims against Defendants Fowler and Allen for failure to state a claim upon which relief may be granted.

### g. Disciplinary Adjustment Hearings

Plaintiff alleges that he was "subjected" to two disciplinary adjustment hearings and that Defendants Rogers, Von De'Wingelo, Richie, Melton, and Bendler-Crick violated his right to due process under the Fourteenth Amendment during these proceedings. Plaintiff states that the outcome of these hearings were that he received penalties which included placement in segregation and the loss of good-time credits.

14

Plaintiff is barred from obtaining damages for the alleged violations of his due-process rights during these disciplinary proceedings by the doctrine set forth in *Heck v. Humphrey*, 512 U.S. 477 (1994). In *Heck*, the Supreme Court held that:

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.

*Heck*, 512 U.S. at 486-87. This "favorable termination" rule bars § 1983 claims that "would necessarily imply the invalidity" of a prior conviction or sentence that has not been overturned. *Id.* at 487. In *Edwards v. Balisok*, 520 U.S. 641, 648 (1997), the Supreme Court held that the favorable termination rule set forth in *Heck* applies to prisoner allegations of due process violations in prison disciplinary hearings that result in the deprivation of good-time credits.

Here, Plaintiff has not alleged that the disciplinary conviction(s) he received at the conclusion of the proceedings at issue were reversed on direct appeal, expunged by executive order, declared invalid by a tribunal, or called into question by a federal court's issuance of a writ of habeas corpus. For this reason, Plaintiff's § 1983 due process claims regarding these proceedings are not cognizable and must be dismissed for failure to state a claim upon which relief may be granted.

### h.  Denial of Access to the Courts

Plaintiff alleges that Defendants Roger Mitchell, Massey, Grief, Hutchinson, and Richie engaged in conduct which "routinely denied and presently denies access to the courts right(s) of access to legal research, computer data court decisions, legal document(s) copies, legal assistance from prison assigned prisoner legal aides." Plaintiff further alleges that he was hindered from

using KSP's law library "for its intended and proclaimed purpose due to the numerous prison administrative hinderouses, lack of adequate space, [and] lack of adequate privacy . . ."

As explained above, to state a claim for a denial of access to the courts, a prisoner must demonstrate actual prejudice to pending litigation that challenges his conviction or conditions of confinement. *Lewis v. Casey*, 518 U.S. at 355; *Thaddeus-X v. Blatter*, 175 F.3d at 391. That is, there must be an actual injury, and no actual injury occurs without a showing that such a claim "has been lost or rejected, or that the presentation of such a claim is currently being prevented." *Lewis v. Casey, 518 U.S* at 356.

Because Plaintiff makes no claim of actual injury to any litigation he is engaged in, the Court will dismiss these claims for failure to state a claim upon which relief may be granted.

### i. Denial of Vitamins and Moisturizers

Plaintiff alleges that Defendants Bradley, Robertson, Hart, and Jordan violated his rights under the Eighth and Fourteenth Amendments by denying prisoners placed in segregation access to "health and human body nutrients (vitamins) and body hygienic and body moisturizing products, which are sold by the prison facility's canteen store" and are accessible to all other prisoners, including those in protective custody and on "death row."

The Court can discern no Eighth Amendment claim based upon this allegation. To the extent that Plaintiff is asserting a violation of the Equal Protection Clause of the Fourteenth Amendment, the Court finds that he also fails to state a claim. The Equal Protection Clause seeks to ensure that similarly situated people are treated alike. *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985). It "'does not require things which are different in fact or opinion to be treated in law as though they were the same.'" *Plyler v. Doe*, 457 U.S. 202, 216 (1982) (citation omitted). Prisoners placed in administrative segregation are not situated similarly to any other

16

prisoners within a prison facility.  Thus, Plaintiff cannot state an equal-protection claim based on disparate treatment between prisoners placed in administrative segregation and any other prisoner group.  *See, e.g., Fogle v. Pierson*, 435 F.3d 1252, 1261 (10th Cir. 2006) (affirming dismissal of prisoner's equal protection claim because administrative segregation inmates are not similarly situated to general  population inmates for equal protection analysis); *Martin v. Scott*, 156 F.3d 578 (5th Cir. 1998) (affirming equal protection claim grounded in being treated differently than other prisoners at a different level of administrative segregation fails to state a claim and is frivolous).

For these reasons, the Court will dismiss Plaintiff's Eighth and Fourteenth Amendment claims based upon the alleged denial of vitamins and moisturizers for failure to state a claim upon which relief may be granted.

### j.   "Tyranny and Treason"

Plaintiff asserts that Defendants Beshear, Crews, Dunn,  Hart,  Jordan, Dunn, and White committed "tyranny and treason" and violated the Fourteenth Amendment "in choosing to ignore and aschew (or attempt to do so) the duties of their offices. . . ."   He also alleges that these Defendants' "ignorances, approvals, and/or enforcements of the defendants' conduct contrary to the Commonwealth of Kentucky's written policies and bylaws, by written correspondences, denying the imprisoned, oppressed Plaintiff's numerous and lengthy efforts for professional and/or humane intervention and corrections is the practice of anarchy and tyranny."

The Court construes these allegations as Plaintiff's attempt to state a claim against these Defendants based on their supervisory positions over the KDOC and KSP personnel.  However, the doctrine of *respondeat superior*, or the right to control employees, does not apply in § 1983 actions to impute liability onto supervisors.  *Monell*, 436 U.S. at 691; *Taylor v. Mich. Dep't of*

17

*Corr.*, 69 F.3d 76, 80-81 (6th Cir. 1995); *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir. 1984). "Likewise, simple awareness of employees' misconduct does not lead to supervisor liability." *Leary v. Daeschner*, 349 F.3d 888, 903 (6th Cir. 2003) (citing *Lillard v. Shelby Cty. Bd. of Educ.*, 76 F.3d 716, 728 (6th Cir. 1996)). Rather, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676; *Loy v. Sexton*, 132 F. App'x 624, 626 (6th Cir. 2005) ("In order for supervisory liability to attach, a plaintiff must prove that the official 'did more than play a passive role in the alleged violation or showed mere tacit approval of the goings on.'") (quoting *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999)). Supervisory liability "must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.'" *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998)).

Plaintiff's above allegations do not suggest that his claims against these Defendants are based upon anything another than a mere failure to act upon his complaints against the other Defendants in this action. For this reason, the Court concludes that Plaintiff's claims against these Defendants must be dismissed for failure to state a claim upon which relief may be granted.

### k. Being Forced to "Lay Down"

Plaintiff alleges that Defendant Jordan violated his rights under the Eighth and Fourteenth Amendments by requiring prisoners "to lay on their stomach in a prong position, face up to the ground, hands turned palms up, for no purposeful or security reason(s)."

The Court cannot determine how this allegation states a claim under either the Eighth or Fourteenth Amendments. Thus, the Court will dismiss Plaintiff's claim against Defendant Jordan based upon these allegations for failure to state a claim upon which relief may be granted.

### l.  Interference in Medication Line

Plaintiff alleges that on one occasion Defendants Mitchell and Bare "interfered with Plaintiff's [] attempt to receive medical attention by Ordering [him], under threat of disciplinary action and high potential of violence, to leave the assigned medical medication line and not return." Plaintiff claims that these actions violated his rights under the Eighth and Fourteenth Amendments.

In the context of a claim regarding medical treatment, an inmate must show two elements to demonstrate a violation of his Eighth Amendment rights: 1) that he was suffering from a "serious" medical need; and 2) that the prison officials were "deliberately indifferent" to the serious medical need.  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  Plaintiff's allegations fail to meet this standard because he provides no information from which the Court can determine that he was suffering from a "serious medical need."  In addition, the Court can discern no Fourteenth Amendment claim based upon these allegations.

Thus, the Court will dismiss Plaintiff's claims based upon these allegations for failure to state a claim upon which relief may be granted.

### m.  "No Contact" Visitation Policy

Plaintiff alleges that Defendants Crews and Jordan "implemented a new prisoner visitation system method that would deny a prisoner [] and his visitors from any form of intimant physical hugging, kissing and/or any show of physical compassions and reflections of love and endearment that is a part of moral support of family, loved ones, and/or friendship."  Plaintiff alleges that this policy violates his rights under the Eighth and Fourteenth Amendments.

Plaintiff's claims based upon this allegation fail because "[t]here is no inherent, absolute constitutional right to contact visits with prisoners." *Bazzetta v. McGinnis*, 124 F.3d 774, 779 (6th Cir. 1997) (citing *Bellamy v. Bradley*, 729 F.2d 416, 420 (6th Cir. 1984) ("Prison inmates have no

absolute constitutional right to visitation.")).  Indeed, in *Bazzetta*, the Sixth Circuit specifically held that a properly imposed ban on contact visits does not violate the First Amendment right of association, the Due Process Clause of the Fourteenth Amendment, or constitute cruel and unusual punishment under the Eighth Amendment.  *Id*.

Thus, the Court will dismiss Plaintiff's claims based regarding the "no-contact" visitation policy for failure to state a claim upon which relief may be granted.

### n.  Reading/Loss of Personal Mail

Plaintiff alleges that unknown State Defendants "intentionally stop[ped], opened, read, and harassed, and copied the contents of Plaintiff's out going and in-coming personal mails, and at time convient to them despose, lose, or misplace Plaintiff's mails."

The Sixth Circuit has held that prison officials may open, inspect for contraband, and read a prisoner's incoming non-legal mail provided that the inspection is conducted pursuant to a policy to maintain prison security.  *See Sallier v. Brooks*, 343 F.3d 868, 874 (6th Cir. 2003); *Lavado v. Keohane*, 992 F.2d 601, 607 (6th Cir. 1993).  It also ""well-settled that prison or jail personnel do not violate the First Amendment by inspecting and reading an inmate's outgoing non-legal mail.'"  *Bergey v. Tribley*, No. 2:15-cv-43, 2015 U.S. Dist. LEXIS 65674, at *10 (W.D. Mich. May 20, 2015) (quoting *Frey v. Raisanen*, No. 2:14-cv-10192, 2014 U.S. Dist. LEXIS 16712, at *2 (E.D. Mich. Feb. 11, 2014); *Altizer v. Deeds*, 191 F.3d 540, 549 (4th Cir. 1999) (opening and inspecting an inmate's outgoing mail is reasonably related to legitimate penological interests and does not violate the First Amendment); *Smith v. Delo*, 995 F.2d 827, 830 (8th Cir. 1993) (prison officials are justified in screening outgoing nonlegal mail for escape plans, contraband, threats, or evidence of illegal activity).

In light of this jurisprudence, and the case law set forth above regarding the loss/destruction of property under *Parratt*, the Court concludes that Plaintiff's allegations regarding his personal mail fail to state a claim upon which relief may be granted.

### o. Excessive Force

Plaintiff alleges that Defendant Todd violated Plaintiff's constitutional rights "when he maliciously and painfully squeezed metal hand cuffs on Plaintiff's right wrist to provoke [] Plaintiff to jerk away in reaction."  Plaintiff alleges that Defendants Allen, Stephen Mitchell, O'Dell, and Bradley violated his constitutional rights when they "ordered and/or participated and/or witnessed employees StephenMitchell and O'Dell spray Plaintiff with O.C spray (mace) . . . who was inside of his assigned segregated cell at the time."  Plaintiff asserts that these actions violated his rights under the Eighth and Fourteenth Amendments.

The Court cannot discern how the Fourteenth Amendment is applicable to these allegations.  As to the Eighth Amendment, the Court construes these allegations as excessive-force claims.

> To state a claim for excessive force under the Eighth Amendment, an inmate must plead: (1) the objective component, or that the injury was sufficiently serious, and (2) the subjective component, or that the prison official applied force "maliciously and sadistically for the very purpose of causing harm." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Hudson v. McMillian*, 503 U.S. 1, 6, 112 S. Ct. 995, 117 L. Ed. 2d 156 (1992)). To determine the good faith of the alleged assailant, courts should consider the reasons or motivation for the conduct, the type and excessiveness of the force used, and the extent of the inflicted injury. *See Hudson*, 503 U.S. at 7.

*McDougald v. Stone*, 2019 U.S. App. LEXIS 577, at \*7 (6th Cir. Jan. 8, 2019).

The Court finds that Plaintiff fails to state an Eighth Amendment claim excessive-force claim against Defendant Todd because he does not allege Defendant Todd's actions caused him a

sufficiently serious injury under the objective component of this standard.  Thus, the Court will dismiss this claim for failure to state a claim upon which relief may be granted.

Upon consideration, the Court will allow Eighth Amendment excessive-force claims to proceed against Defendants Stephen Mitchell and O'Dell based upon the alleged administration of "O.C. spray" and Eighth Amendment failure-to-protect claims to proceed against Defendants Allen and Bradley in their individual capacities.

### B.  Wellpath Nurse McKinney

Plaintiff alleges that Defendant McKinney violated his rights under the Eighth and Fourteenth Amendments by "issuing five (5) days of pain pills due to server tooth ache of [] Plaintiff but refused to schedule Plaintiff to be examined by the facility's dentist, Plaintiff has been left in pain to the point that Plaintiff has been forced to extract three (3) of his teeth himself."

Plaintiff's official-capacity claim against Defendant McKinney is deemed a claim against her employer, Wellpath.  *See, e.g.*, *Smith v. Davis*, No. 5:17-CV-P187-GNS, 2018 U.S. Dist. LEXIS 41882, at *16 (W.D. Ky. Mar. 14, 2018) (finding official-capacity claim against a Correct Care Solutions (CCS) employee to be against CCS itself); *Prather v. Corr. Care Sols.*, No. 3:16-CV-P60-JHM, 2016 U.S. Dist. LEXIS 65363, at *12 (W.D. Ky. May 18, 2016) (same).  The Sixth Circuit has held that the same analysis that applies to § 1983 claims brought against municipalities, also applies to private corporations contracted to provide medical services to inmates, such as Wellpath.  *See, e.g.*, *Parsons v. Caruso*, 491 F. App'x 597, 609 (6th Cir. 2012) (recognizing that a "*Monell* custom or policy claim" can be brought under § 1983 against a private corporation that provides medical care to inmates); *see also Braswell v. Corr. Corp. of Am.*, 419 F. App'x 622, 627 (6th Cir. 2011) (applying *Monell*'s municipal liability standard to the private corporation that had

been contracted to operate a jail) (citing *Street v. Corr. Corp. of Am.*, 102 F. 3d. 810, 814 (6th Cir. 1996)).

When a § 1983 claim is made against a municipality, this Court must analyze two distinct issues: (1) whether Plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the municipality is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). With regard to the second prong, a municipality cannot be held responsible for a constitutional deprivation unless there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation. *Monell*, 436 U.S. at 691; *Deaton v. Montgomery Cty., Ohio*, 989 F.2d 885, 889 (6th Cir. 1993). To demonstrate municipal liability, a plaintiff "must (1) identify the municipal policy or custom, (2) connect the policy to the municipality, and (3) show that his particular injury was incurred due to execution of that policy." *Alkire v. Irving*, 330 F.3d 802, 815 (6th Cir. 2003) (citing *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993)). The policy or custom "must be 'the moving force of the constitutional violation' in order to establish the liability of a government body under § 1983." *Searcy v. City of Dayton*, 38 F.3d 282, 286 (6th Cir. 1994) (quoting *Polk Cty. v. Dodson*, 454 U.S. 312, 326 (1981) (citation omitted)).

In the instant case, Plaintiff has not alleged that any violation of his rights occurred as the result of a policy or custom implemented or endorsed by Wellpath. Thus, the Court will dismiss Plaintiff's official-capacity claim against Defendant McKinney for failure to state a claim upon which relief may be granted.

As to Plaintiff's individual-capacity claims against Defendant McKinney, the Court cannot discern how the Fourteenth Amendment is applicable to Plaintiff's allegations against her.

However, upon consideration, <u>the Court will allow an Eighth Amendment claim for deliberate</u> <u>indifference to Plaintiff's serious medical needs to proceed against Defendant McKinney.</u>

### C.  Keefe Foods Commissary Agent Mullians

Plaintiff alleges that Defendant Mullians violated his rights by engaging in false advertisement with regard to commissary items, overcharging prisoners for products, AND "arbitrarily pre-charging prisoners" for products the commissary does not have at the time.

Because the Court can discern no constitutional violation based upon these allegations, it will dismiss Plaintiff's claims against Defendant Mullians for failure to state a claim upon which relief may be granted.

### D.  Injunctive Relief

Finally, the Court turns to Plaintiff's request for injunctive relief.  He asks for the restoration of good-time credits.  However, this is relief Plaintiff must seek in a habeas proceeding and not in this § 1983 action.  *See Preiser v. Rodriguez*, 411 U.S. 475 (1973) ("[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of habeas corpus.")

Thus, this claim will be also be dismissed for failure to state a claim upon which relief may be granted.

### IV.  CONCLUSION

For the reasons set forth herein, and the Court being otherwise sufficiently advised,

**IT IS ORDERED** that the following individual-capacity claims shall be allowed to proceed: Eighth Amendment excessive-force claims against Defendants Stephen Mitchell and O'Dell; Eighth Amendment failure-to-protect claims against Defendants Allen and Bradley; and

an Eighth Amendment claim for deliberate indifference to Plaintiff's serious medical needs to proceed against Defendant McKinney.

In allowing these claims to proceed, the Court passes no judgment upon their merit or upon the ultimate outcome of this action.

**IT IS FURTHERED ORDERED** that all other claims brought by Plaintiff are **DISMISSED** pursuant to 28 U.S.C. § 1915A(b)(1) and/or (b)(2) for failure to state a claim upon which relief may be granted and for seeking relief from a defendant who is immune from such relief.

The **Clerk of Court is DIRECTED to terminate the following as parties to this action since no claims remain against them:** KSP,[3] Beshear; Crews, Dunn, Jordan, White, Hart, Grubbs, Roger Mitchell, Barrett, Campbell, Ryan, Gibson, Artese, Fowler, Massey, Rogers, Melton, Richie, Bendler-Crick, Smith, Wilson, Hutchinson, Robertson, Grief, Harris, von De'Wingelo, Vinson, Vaughn, Todd, Seth Mitchell, Neely, Bare, Hughes, and Mullians.

The Court will enter a separate Service and Scheduling Order to govern the claims it has permitted to proceed.

Date: March 4, 2022

**Thomas B. Russell, Senior Judge**
**United States District Court**

cc:   Plaintiff, *pro se*
      Defendants
      General Counsel, Justice & Public Safety Cabinet, Office of Legal Counsel

---

[3] KSP was ostensibly listed as a Defendant as a placeholder until Plaintiff filed an amended complaint setting form the named Defendants.

25