**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF KENTUCKY**
**PADUCAH DIVISION**

**JAMES NOONAN BLAIR, JR.** **PLAINTIFF**

**v.** **CIVIL ACTION NO. 5:21-CV-P75-JHM**

**KENTUCKY STATE PENITENTIARY et al.** **DEFENDANTS**

**MEMORANDUM OPINION AND ORDER**

Before the Court is the motion for summary judgment filed by Defendants Patricia Allen, Stephen Mitchell, Melvin O'Dell, and Travis Bradley (DN 24). *Pro se* Plaintiff James Noonan Blair has filed a response (DN 29). The matter being ripe, the Court will grant Defendants' motion for the reasons set forth below.

**I.**

Plaintiff's amended complaint (DN 10) alleged that while housed at the Kentucky State Penitentiary (KSP) in the Restricted Housing Unit (RHU) on September 24, 2020, then-Defendant Officer Nathaniel Todd[1] physically assaulted Plaintiff by maliciously and painfully squeezing metal handcuffs on his right wrist "to provoke prisoner Plaintiff to jerk away in reaction."[2] DN 10, p. 16. Plaintiff further alleged that Defendants KSP Captain Allen, KSP Lieutenant Mitchell, KSP Sergeant O'Dell, and RHU Unit Administrator Bradley violated his constitutional rights when they "ordered and/or participated and/or witnessed employees Stephen Mitchell and O'Dell spray Plaintiff with O.C. spray (mace) . . . who was inside of his assigned

[1] On initial review of the complaint, the Court dismissed the excessive-force claim against Officer Todd for failure to state a claim upon which relief may be granted and dismissed him as a party to this action. DN 11, pp. 21-22, 25.

[2] This civil action was opened when Plaintiff sent a letter (DN 1) without an attached complaint to the Court which stated that that he had submitted "the full filing fee and administrative fee for [a] civil rights complaint under [] § 1983." The Court ordered Plaintiff to file an amended complaint (DN 5). Plaintiff did so, but because he failed to include this case number on it, it was filed in another of his cases. Once Plaintiff brought this to the Court's attention, the Court redocketed the amended complaint in this action as of the date it was originally filed. *See* DNs 9 and 10.

segregated cell at the time." *Id*. at 17. On initial review under 28 U.S.C. § 1915A, the Court allowed to proceed Plaintiff's Eighth Amendment excessive-force claims against Defendants Mitchell and O'Dell in their individual capacities and his Eighth Amendment failure-to-protect claims against Defendants Allen and Bradley in their individual capacities.

**II.**

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party moving for summary judgment bears the burden of demonstrating the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The moving party may discharge its burden by demonstrating the absence of evidence to support an essential element of the nonmoving party's case. *Id.* Once the moving party demonstrates this lack of evidence, the burden passes to the nonmoving party to establish, after an adequate opportunity for discovery, the existence of a disputed factual element essential to his case with respect to which he bears the burden of proof. *Id.* When ruling on a motion for summary judgment, the Court is required to draw all reasonable inferences in favor of the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). If the record taken as a whole could not lead the trier of fact to find for the nonmoving party, the motion for summary judgment should be granted. *Id.* at 586.

Where the nonmoving party bears the burden of proof at trial, "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 323. The nonmoving party must do more than raise some doubt as to the existence of a fact; the nonmoving party must produce evidence that would

be sufficient to require submission of the issue to the jury. *Lucas v. Leaseway Multi Transp. Serv., Inc.*, 738 F. Supp. 214, 217 (E.D. Mich. 1990).

**A. Excessive force**

The Eighth Amendment prohibits punishments which "'involve the unnecessary and wanton infliction of pain.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). An Eighth Amendment claim has objective and subjective components. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014). The objective component requires that the use of force be more than *de minimis*. *See Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992). The Supreme Court, however, has cautioned that a "significant injury" is not a threshold requirement for sustaining an excessive-force claim. *See Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam).

In the context of an excessive-force claim, the subjective inquiry focuses on "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'" *Hudson*, 503 U.S. at 6 (quoting *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). To determine the good faith of the alleged assailant, courts should consider the reasons or motivation for the conduct, the type and excessiveness of the force used, and the extent of the inflicted injury. *See id.* at 7. The Court has recognized that the extent of an inmate's injury may be suggestive of whether force was applied in a good-faith manner, *see id.*, and the extent of force involved. *See Wilkins*, 559 U.S. at 37.

Defendants first address the subjective component, arguing that "[t]here can be no dispute that Defendants had a plausible justification for applying force to Plaintiff under the circumstances presented[.]"[3] DN 24-1, p. 6. Defendants assert that while in the process of being

[3] Defendants refer to May 18, 2020, in this sentence. This appears to be a mistake, as throughout the rest of the document Defendants accurately refer to the events of September 24, 2020. *See, e.g.*, DN 24-1, pp. 2, 7-10.

handcuffed through the tray slot of his cell door, Plaintiff pulled away while partially cuffed. *Id*. According to Defendants, Plaintiff could use his partially cuffed hands as a weapon, so a cell-entry team lead by Defendant Mitchell was formed. The team ordered Plaintiff to assume the prone position; when Plaintiff did not comply, Defendant Mitchell deployed OC spray. *Id*. At that point, Plaintiff complied, and the cell-entry team was able to restrain him and escort him to the restraint chair. *Id*. As support, Defendants attach the affidavits of Defendants Mitchell, Bradley, and O'Dell.

Defendant Mitchell avers:

> It was necessary to perform the cell entry into [Plaintiff's] cell because while wrist restraints (handcuffs) were being placed on [him] through a tray slot, he pulled away from the tray slot with one hand cuffed and the other hand free . . .To maintain institutional security, it was necessary to enter [Plaintiff's] cell using a cell entry team to restrain the inmate due to the potential for the handcuffs to be used as a weapon against staff members or other inmates. [] After the cell entry team was formed, I ordered [Plaintiff] to get in a prone position since he had the wrist restraints as a potential weapon. [Plaintiff] refused to get into a prone position. After [Plaintiff] refused . . ., I deployed OC spray . . . and [Plaintiff complied]. The cell entry team was then able to safely place [Plaintiff] into a restraint chair and remove the wrist restraints from his wrist.

DN 24-4, pp. 1-2.

The affidavits of Defendants Bradley and O'Dell echo Defendant Mitchell's statements set forth above. *See* DN 24-5 (Bradley Affidavit), pp. 1-2; DN 24-6 (O'Dell Affidavit), pp. 1-2.

Defendants next address the relationship between the need for and the amount of force used, concluding that by pulling away from the officer who was putting on the handcuffs Plaintiff both injured the officer and gained possession of the cuffs, a potential weapon. DN 24-1, pp. 8-9. Further, when Defendant Mitchell ordered Plaintiff to assume the prone position, he did not comply; this non-compliance prompted Defendant Mitchell to deploy the OC spray. *Id*. at 9. Defendants assert that once Plaintiff became compliant, the officers stopped the escalation

of force. *Id*. As support, Defendants rely on the handheld video footage of the cell extraction, which they submit as an exhibit.

Defendants further argue that Plaintiff does not identify any injury due to the OC spray in his complaint, Plaintiff's medical record shows that he refused decontamination, and the nurse who evaluated him immediately thereafter noted that he showed no signs of injury and had no complaints of pain, injury, or discomfort. *Id*. at 10. As support, Defendants attach a contemporaneous prison record recording that Nurse McKinney was called to decontaminate Plaintiff, but he refused; that she checked his vitals which were within normal limits; that he was oriented and alert; that his respirations were even and unlabored; that he showed no signs or symptoms of injury; and that he had no complaints of pain, injury, or discomfort. DN 24-8.

Finally, Defendants argue that they did not have a culpable state of mind as shown by the fact that Plaintiff acted aggressively to Officer Todd before Defendant Mitchell used force to gain control of the situation. DN 24-1, pp. 10-11. They also point to Kentucky Corrections Policy and Procedure (CPP) 9.1, which allows for the use of force to gain compliance if necessary. In support, Defendants cite to Defendant Mitchell's affidavit, which states that CPP 9.1 "allows for the use of force in correctional institutions to enforce the lawful rules of the institution and to gain compliance when necessary." DN 24-4, p. 2.

As to the objective component of the excessive-force claim, Defendants argue that no reasonable jury "could conclude that the pain inflicted by Defendants was sufficiently serious to offend contemporary standards of decency" because there is no evidence that they acted maliciously or sadistically. DN 24-1, p. 11 (citing *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), and *Hudson*, 503 U.S. at 9).

The Court has reviewed the video footage submitted by Defendants. It begins with Defendant Mitchell explaining that because Plaintiff pulled away from Officer Todd, breaking off a cuff key, DN 29-7, 00:12-14, he had received permission from Defendant Allen to assemble a cell extraction team. *Id*. at 00:32-35. He advised his team that Plaintiff "ha[s] a weapon, pair of cuffs." *Id*. at 1:00-02. The video shows Defendant Mitchell spraying OC into the cell because of Plaintiff's refusal to comply with his order to assume the prone position and the team stepping back to allow the OC time to work. *Id*. at 1:54-59, 14:25-45.

The camera then focuses through the cell door on Plaintiff in the cell. *Id*. at 2:30. When Plaintiff moves his right wrist into view, the handcuffs are clearly attached to it. *Id.* at 2:44-3:04, 3:17-35, 4:13-34.

Not long thereafter, the cell entry team orders Plaintiff to assume the prone position, he complies, and the team extracts him and escorts him to the restraint chair. Once in the restraint chair, Plaintiff denies that he needs water to decontaminate. *Id.* at 10:35-42. A woman who identifies herself as Nurse McKinney checks his blood pressure and his restraints and reports that his vitals were all within normal limits. *Id.* at 10:45-13:05, 14:06-25. At no time in the video does Plaintiff complain of injury or other pain. All members of the extraction team state at the conclusion of the video that there were no injuries. *Id.* at 14:45-15:15.

In his response (DN 29) to the summary-judgment motion, Plaintiff takes issue with prior orders in this case which have no bearing on the disposition of the summary-judgment motion. DN 29, pp. 1-2, 5. He also asserts that Defendants have improperly influenced the Court as evidenced by the Court ignoring the fact that the Defendants' improperly served their summary-judgment motion to the wrong address for Plaintiff. *Id*. at 5. The Court, however, sent a copy of the motion to Plaintiff and provided him with an additional 30 days in which to file a response.

*See* DN 27. Plaintiff, therefore, suffered no prejudice from Defendants' failure to serve him properly with their motion.

As for the merits of Defendants' summary-judgment motion, Plaintiff asserts that the affidavits submitted by Defendants "intentionally present[] perjury." DN 29, p. 2. He points to a prison disciplinary report, which he attaches as an exhibit and which he describes as providing information contrary to the affidavits. *Id*. at 3. Specifically, Plaintiff argues that, according to his exhibit, Officer Todd was *removing* handcuffs from Plaintiff, not putting them on, and that that document does not state that a set of handcuffs or handcuff key was claimed to have been in Plaintiff's possession. *Id*. He asserts that video footage from the stationary camera for his cell, which Defendants did not provide, would show that Officer Todd left the cell door with his handcuffs in his hand. *Id*. According to Plaintiff, this fact begs the question why a cell-entry team was ordered to enter Plaintiff's cell, spray him with OC spray, and then place him in a restraint chair. *Id*.

The attached disciplinary report signed by Defendant Mitchell (DN 29-1) concerns the incident on September 24, 2020. It states in the description of the incident that at approximately 10: 30 a.m.:

> Officer Nathaniel Todd informed Lieutenant Stephen Mitchell that Inmate James Blair #108833 housed in Cell #20 . . . had pulled away from Officer Todd as he was *removing* metal wrist restraints. When Inmate Blair pulled away it caused Officer Todd's knuckles to hit the tray slot and break the handcuff key. During the incident, Officer Todd's arms were pulled into the cell and Officer Todd received scratches on both of his hands. At approximately 10:31 a.m., Lieutenant Mitchell received permission from Captain Patricia Allen via radio to place Inmate Blair in the restraint chair for staff assault. At approximately 10:32 a.m., learned from Licensed Practical Nurse Terri McKinney that Inmate Blair had no restrictions for the use of O.C. or electronic control devices if they were deemed necessary to control the Inmate's behavior. At approximately 10:39 a.m., a cell entry team was formed consisting of Lieutenant Mitchell leading with O.C. can #78 . . . . At approximately 10:41 a.m., the cell entry team entered the walk. At approximately 10:42 a.m., Inmate Blair was ordered to back up to the cell door to

> be restrained. Inmate Blair refused all orders to comply. Lieutenant Mitchell deployed a short burst of O.C. from can #78 striking Inmate Blair in the facial area. . . . At approximately 10:45 a.m., the cell entry team entered the walk. Inmate Blair complied with orders and assumed the prone compliance position.

DN 29-1, p. 1 (emphasis added).

The disciplinary report details that the investigating officer spoke with Defendant Mitchell, who "confirmed . . . [that Plaintiff] pulled away from Officer Todd causing scratches to Officer Todd's arms. Inmate Blair was placed in the restraint chair for his actions." *Id*. at 2.

The investigating officer also spoke to Officer Todd, who "confirmed on September 24, 2020, at approximately 10:30 a.m., Inmate James Blair pulled away from him as he was *removing* metal wrist restraints. This action caused Officer Todd to receive scratches on his arms and a broken cuff key." *Id*. (emphasis added).

The factual dispute that Plaintiff identifies as to whether Officer Todd was putting or removing handcuffs when Plaintiff pulled away is not material. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (fact is "material" if its resolution "might affect the outcome of the suit under the governing law"). Whether Officer Todd was in the process of putting on or taking off handcuffs on Plaintiff, the record (including Plaintiff's exhibit) supports that Plaintiff pulled away from Officer Todd, causing injury to Officer Todd's hand.

Whether Plaintiff had handcuffs in his possession would be material as to the reason for forming the cell extraction team, armed with OC spray, to remove Plaintiff from the cell and retrieve the handcuffs. However, Plaintiff has not produced evidence sufficient to require submission to a jury to decide this issue. The disciplinary report produced by Plaintiff does not state that Plaintiff did not have cuffs in his possession. In addition to affidavits from Defendants averring that Plaintiff possessed handcuffs in his cell, DN 24-4 (Mitchell Affidavit), p. 1; DN 24-5 (Bradley Affidavit), p. 1; DN 24-6 (O'Dell Affidavit), p. 1, Defendants attach a KSP

Information Report made contemporaneous with the incidents in question in which Defendant Bradley reported that before the extraction Defendant Mitchell informed the cell entry team that Plaintiff possessed handcuffs, a potential weapon. DN 24-2. Although Plaintiff asserts that the video footage from the stationary camera of his cell door, had it been produced, would show that Officer Todd walked away from Plaintiff's cell door with the handcuffs in his hand, the video footage attached to Defendants' motion clearly shows that Plaintiff had handcuffs on his right wrist at the time the cell extraction team came to his cell. *See* DN 29-7, 2:44-3:04, 3:17-35, 4:13-34. Additionally, whether or not Plaintiff had in his possession a broken cuff key is not material because he had the handcuffs, which Plaintiff does not dispute could be weaponized. Furthermore, Plaintiff's exhibit actually supports Defendants' explanation that OC spray was used only after Plaintiff refused to comply with an order. DN 29-1, p. 1 ("Inmate Blair was ordered to back up to the cell door to be restrained. Inmate Blair refused all orders to comply. Lieutenant Mitchell deployed a short burst of O.C. . . . striking Inmate Blair[.]").

Simply put, the facts of this case do not support Plaintiff's allegation that Defendants used excessive force. The record shows that Plaintiff was in possession of handcuffs; the cell-extraction team was formed to remove him from his cell due to him having the cuffs, which could be used as a weapon, to take him to the restraint chair for causing injury to Officer Todd; one spray of OC was discharged into Plaintiff's cell only after he refused to assume the prone position; once he assumed the prone position, the team extracted Plaintiff and moved him to the restraint chair with no further use of force; he was provided an opportunity to be decontaminated but refused; a nurse checked his vitals and the restraints; and Plaintiff he did not complain of pain, injury, or discomfort. Thus, in considering the reasons for the use of force (the injury to Officer Todd, the possession of a potential weapon, and the refusal to assume the prone position

on command), the type and amount of force (one spray of OC), and any inflicted injury (none), the Court determines that Defendants have carried their burden as to the subjective component of Plaintiff's excessive-force claim. *See, e.g.*, *Roberson v. Torres*, 770 F.3d 398, 406 (6th Cir. 2014) (noting that the Sixth Circuit has concluded in numerous cases that "the use of . . . chemical agents against recalcitrant prisoners" did not violate the Eighth Amendment (citing *Caldwell v. Moore,* 968 F.2d 595, 600 (6th Cir. 1992) (collecting cases)); *Young v. Taylor*, No. 1:18-CV-490, 2018 WL 6417290, at *4 (S.D. Ohio Dec. 6, 2018) ("Multiple cases hold that OC spray may be deployed in order to maintain order and restore discipline, including for rule violations, and even when an inmate remains in his cell."), *report and recommendation adopted*, No. 1:18-CV-490, 2019 WL 1416723 (S.D. Ohio Mar. 29, 2019).

"To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective *and* a subjective component." *Williams*, 631 F.3d at 383 (emphasis added). Therefore, having concluded that Defendants have carried their burden as to the subjective component of Plaintiff's Eighth Amendment excessive-force claim, it is not necessary to consider whether they have done so on the objective component.

The Court will grant Defendants summary judgment on Plaintiff's excessive-force claim.

**B. Failure to intervene**

Defendants argue that Plaintiff's failure-to-intervene claim fails as a matter of law because Defendant Mitchell's use of OC spray was not excessive force. DN 24-1, p. 14. They further assert that no Defendant who was present, which did not include Defendant Allen, witnessed use of force that was in violation of KDOC Policy.[4] *Id.* (citing to Affidavits of Defendants Allen, Mitchell, Bradley, and O'Dell and the video footage). In particular,

[4] Defendant Allen has an additional reason that she is entitled to summary judgment on this claim – she was not present when the OC spray was deployed. *See* DN 24-3 (Allen Affidavit).

Defendants cite to CPP 9.1(f), which states that physical force may be used to "subdue an unruly inmate."

An officer is liable for another officer's use of excessive force where the defendant "'observed or had reason to know that excessive force would be or was being used' *and* 'had both the opportunity and the means to prevent the harm from occurring.'" *Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (emphasis in original) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). Accordingly, without the occurrence of excessive force, no failure-to-intervene claim exists. *See Hunt v. Sunquist*, 822 F. App'x 468, 478-79 (6th Cir. 2020) ("If no excessive force was used, [defendant] cannot be responsible for failing to intervene."); *Johnson v. Cnty. of Kalamazoo*, No. 1:23-CV-138, 2023 WL 3309302, at *4 (W.D. Mich. Apr. 21, 2023) (court's conclusion that no excessive force in violation of the Eighth Amendment occurred was "fatal to the failure-to-intervene claim . . . because an underlying constitutional violation is required."), *report and recommendation adopted*, No. 1:23-CV-138, 2023 WL 3303855 (W.D. Mich. May 8, 2023).

Having determined that no excessive force was used, Plaintiff's failure-to-intervene claim fails as a matter of law. The Court will grant Defendants summary-judgment motion on this claim as well.[5]

## III. CONCLUSION AND ORDER

For the foregoing reasons,

**IT IS ORDERED** that Defendants' motion for summary judgment (DN 24) is **GRANTED**.

[5] Defendants also argue that they are entitled to qualified immunity. *See* DN 24-1, pp. 13-15. Given the Court's ruling on the merits, it is not necessary for the Court to consider this argument.

The Clerk of Court is **DIRECTED** to terminate Defendants Patricia Allen, Stephen Mitchell, Melvin O'Dell, and Travis Bradley as parties to this action.

Date: August 16, 2023

Joseph H. McKinley Jr., Senior Judge
United States District Court

cc: Plaintiff, *pro se*
Counsel of record
4414.009